# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 20-1060M(NJ) |
| Samsung Galaxy S9, unknown serial number (ATF Property Item #3, Case No. 772115-20-0084), Black Alcatel flip cellphone, unknown serial number (ATF Property Item #4, Case No. 772115-20-0084) | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the   Eastern   District of   Wisconsin
*(identify the person or describe the property to be searched and give its location)*:

See attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   November 4, 2020   *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    XX❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable Nancy Joseph  .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for ____ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:   October 21, 2020 2:47 p.m.        *[signed]* Nancy Joseph
                                                                       *Judge's signature*

City and state:   Milwaukee, WI.                         Honorable Nancy Joseph
                                                          *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                            *Executing officer's signature*

                                                            *Printed name and title*

## ATTACHMENT A

The property to be searched is: (1) a Samsung Galaxy S9, unknown serial number (ATF Property Item #3, Case No. 772115-20-0084); and (2) a black Alcatel flip cellphone, unknown serial number (ATF Property Item #4, Case No. 772115-20-0084). The Devices are currently located at the ATF Milwaukee Field Office, located at 1000 North Water Street, Suite 1400, Milwaukee, Wisconsin.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.  All records on the Devices described in Attachment A that relate to violations of arson affecting interstate commerce, in violation of Title 18, United States Code, Section 844(i), conspiracy to commit arson, in violation of Title 18, United States Code, Section 844(m), possession with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and involve Antonio BANE since August 24, 2020, including:

   a. preparatory steps taken in furtherance of these crimes;

   b. any information about the

   c. any information about the existence, nature, and scope of the conspiracies and identity of any co-conspirators;

   d. any information recording BANE'S schedule or travel from August 24, 2020 to present;

   e. any information about phone numbers associated with BANE;

   f. any information about the knowledge, use, possession, custody, or control of accelerants, ignitable liquids, or heat sources;

   g. any information about the identity, appearance, or clothing of BANE on August 24, 2020;

   h. lists of customers and related identifying information;

   i. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   j. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   k. all bank records, checks, credit card bills, account information, and other financial records;

   l. any information about the identity, appearance, or clothing of BANE on October 11, 2020;

   m. any information related to motive, intent, or knowledge of the violations described above;

n. any information related to the concealment or destruction of evidence of the violations described above.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Samsung Galaxy S9, unknown serial number (ATF Property Item #3, )
Case No. 772115-20-0084), Black Alcatel flip cellphone, unknown )
serial number (ATF Property Item #4, Case No. 772115-20-0084) )

Case No. 20-1060M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the ____Eastern____ District of ____Wisconsin____, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC, § 844(i) | Violations of arson affecting interstate commerce, Conspiracy to commit arson |
| Title 18, USC, § 844(m) | Possession with the intent to distribute controlled substances |
| Title 21, USC, § 841(a)(1) | SEE ATTACHED AFFIDAVIT FOR ADDITIONAL CHARGES AND DESCRIPTION |

The application is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

*Applicant's signature*

Rick Hankins, ATF SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____Telephone____ *(specify reliable electronic means)*.

Date: October 21, 2020

*Judge's signature*

City and state: Milwaukee, WI.

Honorable Nancy Joseph
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent of the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4. In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI.

5. To date, I have participated in over 270 fire scene examinations and have testified as an expert. I have also been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,400 class hours of fire-related training, and I have been an instructor on fire-related topics on 38 occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 200 live-fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

6. Through my experience and training as a firearm and arson investigator, I am aware that electronic devices, such as cellphones, are used to store and save audio, video, and text files that can link to a variety of criminal activity. These electronic devices often contain evidence about the custody and control of those devices, along with location information about the device's whereabouts at the time of the crime. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7. I am also aware that electronic devices, such as cellphones, are often used during civil unrest to record criminal activity. As an ATF agent, I have been deployed to riots involving arsons, including the Sherman Park riots in 2016 and the Minnesota riots in 2020. I know from training and experience that individuals who commit crimes during riots commonly communicate,

2

photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media, including Facebook.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8. The property to be searched is: (1) a Samsung Galaxy S9, unknown serial number (ATF Property Item #3, Case No. 772115-20-0084); and (2) a black Alcatel flip cellphone, unknown serial number (ATF Property Item #4, Case No. 772115-20-0084). The Devices are currently located at the ATF Milwaukee Field Office, located at 1000 North Water Street, Suite 1400, Milwaukee, Wisconsin.

9. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence of violations of arson affecting interstate commerce, in violation of Title 18, United States Code, Section 844(i), conspiracy to commit arson, in violation of Title 18, United States Code, Section 844(m), possession with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as described in Attachment B.

## PROBABLE CAUSE

10. On August 23, 2020, a subject was shot while being taken into custody by the Kenosha Police Department. That incident triggered both non-violent protests and violent rioting, including numerous arsons throughout the City of Kenosha. During the civil unrest, fires damaged in excess of 30 commercial structures and vehicles in Kenosha.

11. On the evening of August 24, 2020, the Wisconsin Probation and Parole Office, a government building affecting interstate commerce, located at 1212 60th Street, Kenosha, Wisconsin 53140, was one of those buildings destroyed by fire. The 911 dispatcher received the first call for the fire at approximately 10:38 p.m. on August 24, 2020.

12. As part of the investigation into that crime and related nearby arsons, law enforcement obtained and reviewed video and photographs of that incident posted on social media. In those social media videos, investigators could see several people using their cellphones to capture the activity related to looting, criminal damage to property, and fires.

13. ATF also reviewed cellphone videos of the arson at the Wisconsin Probation and Parole Office captured by a firsthand witness, N.D. The videos provided by N.D. showed multiple people working in concert with one another to set fire to the building. The cellphone videos showed a white male outside the Probation and Parole Office take a bat from another male and break windows and a door to the building. The white male was wearing a black hoodie, black shorts, black knee-length socks, and a lighter colored surgical mask. In another video, the same white male took a bottle of lighter fluid from another male and walked toward the front door of the building. The videos also captured conversation about the need for a lighter, at which time the white male produced an item in his hand that appeared to be a lighter. Another video captured the same white male inside the Probation and Parole Office, moving items on the floor to an area where fire is later observed. The same white male is also seen in another video bent over at the front of the Probation and Parole Office's entrance with the fire directly in front of him. The video captured images of the white male spraying liquid from a lighter fluid bottle on to the fire, and the fire intensified. The white male later threw the lighter fluid bottle onto the fire.

4

14. On October 2, 2020, ATF released images of the white male described above to the public in an attempt to identify the individual.

15. On October 8, 2020, M.J. called the ATF tip line about the recent ATF media release, which had requested the public's assistance in identifying suspects responsible for setting fire to the Wisconsin Probation and Parole Office, located at 1212 60th Street in Kenosha, Wisconsin on August 24, 2020. M.J. spoke with Agent Hankins by phone. M.J. provided her/his address to Agent Hankins. M.J. said she recognized a suspect in an ATF media release related to the arson at the Wisconsin Probation and Parole Office. M.J. stated she knew the person who was wearing a black hoodie and mask as Antonio BANE. M.J. said she recognized BANE based on the upper part of the face visible and the distinguishable eyebrows depicted in the photo. M.J. subsequently sent Agent Hankins the photo, which had been released to the public, with a circle around the individual that M.J. identified as BANE.

16. M.J. said she/he was confident that the individual identified was Antonio BANE because she/he knew BANE as a former classmate at Bradford High School in Kenosha, with whom she/he still had occasional contact. M.J. said she/he had purchased marijuana from BANE, and also knew BANE to sell cocaine and prescription pills.

17. M.J. said she/he also followed BANE on Snapchat and stated that BANE had posted a video on Snapchat on either August 24, 2020 or August 25, 2020, in which BANE said he did not have to worry about seeing his probation agent for a while.

18. On October 13, 2020, Agent Hankins met with M.J., and M.J. placed his/her initials and the date on the image used to identify Antonio BANE as the white male wearing a black hoodie, black shorts, black knee-length socks, and a light colored surgical mask described above.

5

M.J. also noted that Antonio BANE's Snapchat username is "ToneBonein Yo Main" and showed Agent Hankins the home screen for that Snapchat username.

19. A query of the name Antonio BANE revealed an Antonio F. BANE (DOB: 05/05/2000), who is on probation with the Wisconsin Department of Corrections. Probation and Parole Agent Shel'Rie Wilson, Badge 21905, is listed as the agent assigned to BANE.

20. Detective Dan Wienke of the Kenosha Police Department sent a photo of the arson suspect to Agent Wilson, who confirmed in a voicemail that she believed the image of the arson suspect depicted Antonio BANE.

21. On October 8, 2020, Agent Hankins emailed Agent Wilson the image from the media release and asked if she could confirm whom she believed was depicted in the image. Agent Wilson responded to the email and said she believed the image depicted Antonio BANE (DOB: 05/05/2000). Agent Wilson said BANE lived with his mother at 6708 15th Avenue, Kenosha, Wisconsin, and that BANE's cell phone number is 262-748-8874.

22. On October 11, 2020, officers of the Kenosha Police Department stopped Antonio BANE for speeding. BANE was driving and had two passengers in the car. Officers found plastic bags containing suspected controlled substances in plain view. Upon searching, officers found several plastic bags containing white and off-white powders, a clear capsule with a white powder inside, a digital scale, and a single loose pill containing a non-controlled substance throughout the car. The pure white powder, weighing approximately 4.2 grams, tested positive for fentanyl. The off-white powder, weighing approximately 3.2 grams, tested positive for the presence of opiates, indicating the presence of heroin. BANE also had $349 in various denominations, and one of the passengers had $819 in various denominations.

23. At the time of the arrest, police found two cellphones on BANE's person: a Samsung Galaxy S9 (Kenosha Police Department Item #12, later inventoried as ATF Item #3), and a black Alcatel flip cellphone (Kenosha Police Department Item #14, later inventoried as ATF Item #4). During the arrest, BANE removed the black Alcatel flip cellphone from his pocket and broke it.

24. Antonio BANE was arrested for possession with intent to deliver 3 to 10 grams of heroin, possession with intent to deliver narcotics, and bail jumping. The two passengers were also charged with the drug crimes.

25. The Devices are currently in the lawful possession of the ATF's Milwaukee Field Office, located at 1000 North Water Street, Milwaukee, Wisconsin. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the ATF.

## **TECHNICAL TERMS**

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

- a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

7

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. Based on my training and experience, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, video recorder, portable media player, personal digital assistant, tablet, or GPS with access to the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

9

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but

10

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

32. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

The property to be searched is: (1) a Samsung Galaxy S9, unknown serial number (ATF Property Item #3, Case No. 772115-20-0084); and (2) a black Alcatel flip cellphone, unknown serial number (ATF Property Item #4, Case No. 772115-20-0084). The Devices are currently located at the ATF Milwaukee Field Office, located at 1000 North Water Street, Suite 1400, Milwaukee, Wisconsin.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

12

# ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of arson affecting interstate commerce, in violation of Title 18, United States Code, Section 844(i), conspiracy to commit arson, in violation of Title 18, United States Code, Section 844(m), possession with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and involve Antonio BANE since August 24, 2020, including:

   a. preparatory steps taken in furtherance of these crimes;
   b. any information about the
   c. any information about the existence, nature, and scope of the conspiracies and identity of any co-conspirators;
   d. any information recording BANE'S schedule or travel from August 24, 2020 to present;
   e. any information about phone numbers associated with BANE;
   f. any information about the knowledge, use, possession, custody, or control of accelerants, ignitable liquids, or heat sources;
   g. any information about the identity, appearance, or clothing of BANE on August 24, 2020;
   h. lists of customers and related identifying information;
   i. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
   j. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
   k. all bank records, checks, credit card bills, account information, and other financial records;
   l. any information about the identity, appearance, or clothing of BANE on October 11, 2020;
   m. any information related to motive, intent, or knowledge of the violations described above;

n. any information related to the concealment or destruction of evidence of the violations described above.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.